WILLIAM HOKE *v.* NATIONAL LIFE & ACCIDENT INSURANCE CO.

[60 South. 218]

INSURANCE.  *Application.  Misrepresentations.*

> Where a party in his application for insurance knowingly makes false statements which are material to the risk, he cannot recover on the policy thus obtained.

APPEAL from the circuit court of Lauderdale county. HON. JNO. L. BUCKLEY, Judge.

Suit by William Hoke against the National Life & Accident Insurance Company.  From a judgment for defendant, plaintiff appeals.

The appellant applied for and obtained a policy in the National Life & Accident Insurance Company. Among other stipulations in the policy, it was agreed that the assured warranted all statements, which he made in his application and in the acceptance of the policy, to be true, and that, if any of said statements were untrue or evasive of the truth, the policy should be void. Among the statements made in response to questions in the application, the assured stated that he had not had medical or surgical treatment within five years last past, and that he had not had certain diseases, among others, hernia, and that he had not been disabled by accidents, and had not received anything as indemnity for accidents during the past five years.

A few days after the issuance of the policy, appellant was injured by the street railway company, and, indemnity being refused by appellee, suit was brought. The defendant filed a general plea and four special pleas, setting up, among other things, that the warranties in the application were false, as appellee had been injured on numerous other occasions prior to the issuance of this policy and within the time stipulated within his warranty, and that he had received medical and surgical treatment several times within the time prescribed, and that he had been treated for hernia during that time, and that he had received money as indemnity for accidents during that time on four different occasions from four different accident companies. The plaintiff filed a replication to said pleas, the gist of which was that he did not sign the application and had no knowledge of its provisions, and that he had answered truthfully all questions asked him by the agent of the appellee. The case was submitted to a jury under instructions which informed them that if they believed the plaintiff signed the application for insurance at the time it was made, then they must find for the defendant. The jury returned a verdict for defendant, and from a judgment in accordance therewith this appeal was prosecuted.

*Fewell & Cameron*, for appellant.

It is the law in Mississippi, and has been for many years, that an insurance policy is to be construed most strongly against the company, and if possible the court should allow recovery instead of forfeiture, as is held in the *Mutual Reserve Fund Life Association* v. *Ogletree*, 77 Miss. 7, in which Judge WOODS speaking for the supreme court quotes the language of the court in *Planter's Insurance Co.* v. *Myers*, 55 Miss. 479, as follows: "We adopt the doctrine of those cases which hold that, if the agent takes charge of the preparation of the application, or suggests or advises what shall be answered, or what will be a sufficient answer, the company shall not avoid

the policy because they are false or untrue, if full dis-
closures were made by the applicant to him." A casual
view of the original application in this case will show
the handwriting different entirely from the handwriting
of the signature alleged to have been that of Bill Hoke's
and in truth and in fact the agent of this company never
asked Hoke any of the questions which are now set up
as breaches of warranty, etc. He did get his name
and age, and then with practically one stroke of the pen-
cil wrote across the warrants in big letters the word
"none." It is wholly unreasonable to say that the
agent read to the plaintiff the many questions printed
on the application and in the fine print, because in the
very nature of things we know it did not occur.

We refer the court to *Continential Ins. Co.* v. *Pierce,*
7 Am. St. Rep. 557. This is a very instructive case
in which under its holding we contended that the court
should have allowed the plaintiffs theory which was
supported by his testimony, to go to the jury. Also
in the case in 39 Am. St. Rep. 356, there are the same
points raised, and is very much in line. There is a long
note in 9 Am. St. Rep., beginning at page 229 which
also fully discusses those propositions which were sought
to be put to the jury by the plaintiff's instructions and
denied by the court.

The nefarious practice of these miserable little insur-
ance companies, whereby they entrap the ignorant into
parting with their money for a contract which is repre-
sented by the insurer to pay him so much money in event
of accident, and the many miserable mean schemes
that such companies have to cut the plaintiff off from
recovery in event of suit, ought not to be countenanced
by the courts of justice in this country. The rule ought
to be in this state, and some day it will be the decisions
of our court, or by statute, that where the insurance
company accepts premiums for such policies, that in
event of accident they shall pay the amount fixed in their
policy. Certain it is in our minds that the court should

have submitted the question to the jury as to whether or not the misrepresentations were material to the risk incurred, if they were not made, or if they were immaterial then this poor negro should have been allowed to recover, but the trial court took away from him that right by instructing the jury in all of its instructions, and without qualification, that they should find for the defendant if they believed he signed the application.

*Neville & Stone*, for appellee.

The jury found by their verdict that the appellant signed the application in this case, and the appellant testified that if he signed it he read it. We therefore submit that if the statements in the application and in the policy, with reference to the appellant's never having hernia, and never having been injured, etc., were warranties, then the only issue to be submitted to the jury was whether or not the defendnat signed the application. We shall undertake later on to show that the statements made in the application and in the policy were warranties and not representations.

Now as to whether or not the appellant signed the application, we request the court to examine his signature to the application, and compare it with the signature on the identification card of the Union Bank & Trust Company, which the appellant admitted was his signature. We submit that it does not take an expert in handwriting to tell that these two signatures were made by the same party.

The appellant also denied that he indorsed the eight vouchers or checks given by the appellee; and he also denied that he signed the receipt to the Mobile & Ohio R. R. Co., which was witnessed by Mr. E. J. Martin, a prominent citizen of Meridian, and at one time the post master of Meridian. He also denied that he signed the receipts and vouchers to the Continental Casualty Company and other accident insurance companies from whom he had collected money at different times.

Now the originals of all these papers have been sent up and we request your honor to carefully compare all of these signatures with the signature on the identification card of the Union Bank & Trust Co.

Now it is further contended by the attorneys for the appellant that the above instruction No. 4 was erroneous because it did not submit to the jury the question as to whehter or not the statements set out in the application and in the policy, with reference to hernia, medical treatment, injuries, etc., were material; in other words, we gather from the brief of our friends on the other side that they contend these statements were representations and not warranties.

We have shown in the statement of facts that in the application the appellant warrants that the facts stated in the application are true. These statements and the application are attached to the policy, and the first clause of the policy states:

"In consideration of the policy, fee, the premium, and of the statements, warranties and agreements in the schedule indorsed hereon, and made a part hereof, which statements the assured makes on the acceptance of this policy and warrants to be true. . . ."

If this does not make the statements contained in the application, and attached to the policy, warranties, then it is impossible to write a contract of insurancee so as to make the insured warrant the truth of statements made by him.

We submit that under all the text-writers and decisions, the statements contained in the application and the policy in this case are warranties. We refer the court to only a few of the many decisions on this question: *The Co-operative Life Association of Mississippi* v. *LeFlore*, 53 Miss. 1; *Hunt* v. *Preferred Accident Insurance Co.*, 35 So. 201; *Fowler* v. *Aetna Fire Ins. Co.*, 16 Am. Dec. 463.

The attorneys for appellant seem to think that this court in the Miazza case overruled the *LeFore case*,

103 Miss. 18

*supra;* in other words, they seem to be of the opinion
that this court held, in the Miazza case that there was
no distinction between a representation and a warranty.
We submit that they are mistaken in this. If the two
opinions delivered by this court in the *Miazza case*
93 Miss. 18, and 93 Miss. 422, are read in the light of
the facts of that case, we think it will be apparent that
it was not the intention of the court to abolish the dis-
tinction between warranties and representations. In
the last analysis the question in the Miazza case was,
whether or not the applicant for insurance had made a
full complete disclosure of the nature of the spell of sick-
ness in Memphis. He stated in his application that
"he had been sick in Memphis, in the year 1913; that he
was at that time doing both day and night work, had
insomnia and nervousness for two weeks, and was at-
tended by Dr. J. B. Stanley, and that he was troubled
with insomnia for three weeks. He further stated to
Dr. Hunter, the company's examining surgeon, that he
had been treated in a sanitarium in Memphis."

It was contended on the part of the insurance company
in the Miazza case that the warranty was breached be-
cause Miazza did not state that his sickness in Memphis
was accompanied by acute dementia.

Judge *Fletcher,* speaking for the court on the second
appeal of the Miazza case, 93 Miss. 437, says: "We
are not able to say, as a matter of law, that the disclos-
ure made by Miazza was not full and complete in any
reasonable or substantial sense. The company was
notified that he had had an attack of insomnia and ner-
vousness, necessitating the attendance of a physician
and his confinement in a sanitarium, and the company
must be charged with knowledge of the symptoms and
consequences which usually and reasonably result from
such an attack," etc.

We submit that if Miazza had warranted that his
sickness in Memphis was not accompanied by acute
dementia, etc., that this court would never have per-

mitted the judgment in favor of Miazza to stand. But if we are mistaken in this, and the court should agree with the attorneys for the appellant that the opinion in the Miazza case overruled the LeFlore case and abolished the distinction between representations and warrants, then we respectfully and most earnestly submit that the opinions of this court in the Miazza cases should be overruled.

Cook, J., delivered the opinion of the court.

This case is unlike the case of *Fidelity Mutual Life Insurance Co.* v. *Miazza*, 93 Miss. 422, 48 South. 1017. In the Miazza case the applicant for insurance informed the company of his illness and confinement in a sanitarium at Memphis, and the court merely held in that case that the case would not be reversed, because the applicant for insurance did not give to the company the details of his illness; the court saying: "We only hold that where there has been a disclosure of this kind, setting out in general terms the nature of the malady, it becomes peculiarly a question of fact for the jury as to whether the applicant has sufficiently gone into details of his illness."

Counsel for appellant complain that the trial court, in its instructions to the jury, limited the inquiry to whether appellant had signed the application for insurance. Under the facts of this case, the sole question involved in the case, it seems to us, was whether or not the defendant had actually signed the application. This is not a case where the applicant claims to have signed the application under a misapprehension or ignorance of what he was doing, as appellant in this case says that he did not sign the application at all. There can be no doubt that the misstatements were material to the risk, and, if the appellant signed the application for insurance, it follows that the verdict of the jury was correct.

*Affirmed.*