## COFFEY *v.* STANDARD LIFE INSURANCE COMPANY OF THE SOUTH, et al.

No. 41464          May 2, 1960          120 So. 2d 143

*Henry Edmonds, Lee V. Prisock,* Jackson, for appellant.

*A. Y. Harper, Wells, Thomas & Wells,* Jackson, for appellees.

KYLE, J.

This case is before us on appeal by Mrs. Erie Prisock Coffey, plaintiff in the court below, from a judgment of the Circuit Court of the First Judicial District of Hinds County rendered in favor of the Standard Life Insurance Company of the South and First Federal Savings & Loan Association, of Jackson, Mississippi, defendants in the court below. The suit was filed by Mrs. Erie Prisock Coffey against the Standard Life Insurance Company of the South to recover benefits alleged to be due on a group life certificate of credit insurance issued to her husband, William Walter Coffey, Sr., now deceased, under a master group life insurance policy issued by the Standard Life Insurance Company to the First Federal Savings & Loan Association, as creditor, insuring the lives of those of its debtors who applied for group life insurance certificates thereunder.

The plaintiff alleged in her declaration that her late husband, William Walter Coffey, Sr., on or about December 31, 1956, being then indebted to the First Federal Savings & Loan Association, in the amount of approxi-

mately $3,650, as evidenced by a promissory note secured by a deed of trust on real property situated in the First Judicial District of Hinds County, which was owned by the plaintiff and her husband as joint tenants with full right of survivership, was advised by the said First Federal Savings & Loan Association that he was eligible for coverage under a group life insurance policy issued by said Standard Life Insurance Company to said Savings & Loan Association covering such mortgage debtors of said Savings & Loan Association as elected to come under its provisions; that in the event he should elect to come under the provisions of said policy, the said Standard Life Insurance Company would upon his death pay off the balance of said indebtedness remaining unpaid; that said coverage was available to him at his election on a nonmedical basis. The plaintiff further alleged in her declaration that plaintiff's husband, on January 4, 1957, elected to obtain such coverage and tendered to said First Federal Savings & Loan Association, as agent for said defendant, Standard Life Insurance Company, the sum of $69.64, which represented the first annual premium for said insurance, which said premium was accepted; that said company put such coverage into effect on January 4, 1957, and issued to the plaintiff's husband a certificate of insurance, a copy of which was attached as an exhibit to the plaintiff's declaration; that plaintiff's said husband, on January 4, 1957, was in good health so far as he knew or had reason to believe, and that he acted in good faith in applying for and obtaining said insurance coverage.

The plaintiff further alleged that on August 11, 1957, the said William Walter Coffey, Sr., died as a result of what was then diagnosed as cancer of the nasal pharynx; that at the time of his death the balance due on said above mentioned indebtedness to said First Federal Savings & Loan Association was $3,424.41; that due proof of death was timely made, but notwithstanding the said defendant Standard Life Insurance Company had refus-

ed to pay said balance, and had informed the plaintiff that such payment would not be made because in its opinion said insured was suffering from the ailment which resulted in his death at the time the coverage was extended and was therefore not insurable. The plaintiff further alleged that the plaintiff had been advised in September 1957 that the defendant was returning the $69.64 premium which it had received to the First Federal Savings & Loan Association. The plaintiff asked for judgment against the defendant Standard Life Insurance Company for the said sum of $3,424.41, with accrued interest thereon.

The defendant Standard Life Insurance Company in its answer admitted that the plaintiff and her late husband were indebted to the First Federal Savings & Loan Association of Jackson in the amount of approximately $3600, as alleged in the plaintiff's declaration, and that the plaintiff and her late husband attempted to obtain coverage under the group life insurance policy referred to in the plaintiff's declaration, and that a premium of $69.64, representing the first annual premium therefor, was paid to and accepted by the defendant; but the defendant charged that the payment of said premium and the acceptance thereof by the defendant were subject to the terms of the above mentioned group policy, the group life certificate and the application for said group life certificate attached thereto. The defendant denied that the defendant put the alleged coverage of said policy into effect without qualification or absolutely, on or about January 4, 1957; and the defendant charged that such coverage was subject to and contingent upon the terms of said certificate and the truthfulness of the statements contained in the application for said certificate attached thereto; and that because of the untrue statements in said application as set forth in said answer, the certificate of insurance was from its inception null and void and of no force and effect. The defendant attached to its answer as exhibits thereto photostat

copies of the Group Creditor Life Policy No. GCL issued by it to the First Federal Savings & Loan Association, and the group life certificate No. 287 issued by it to the said William Walter Coffey, Sr., the insured, as debtor, and payable to First Federal Savings & Loan Association, as creditor, and Mrs. Erie Prisock Coffey, as second beneficiary. The defendant admitted that William Walter Coffey, Sr., the petitioner's husband, died of cancer on August 11, 1957, but denied that the insurance certificate was in full force and effect at that time for the reasons above stated.

The defendant incorporated in its answer a special plea in abatement, in which it was alleged that the First Federal Savings & Loan Association, being principal beneficiary under said policy, was a necessary party to the suit, and that the plaintiff's suit should be abated until said First Federal Savings & Loan Association was made a party thereto.

The defendant further alleged and charged in its answer, as special pleas in bar of plaintiff's right to recover on said group certificate No. 287, that said certificate of insurance issued to the said William Walter Coffey, Sr., was based on a certificate executed by the said William Walter Coffey, Sr., on January 4, 1957, a copy of which was attached to said certificate of insurance, in which the said William Walter Coffey, Sr., certified as follows:

"As a basis for granting the life insurance covered by the above certificate, this is to certify that to the best of my knowledge and belief I am in good health, free from all diseases, deformities, or ailments and of temperate habits; that no company, association, or society for life, accident, or health insurance has ever declined, postponed, or cancelled, or uprated the premium on any application submitted by me for insurance except:

(If there are any exceptions to the above, write same out here fully.)

"No exception.

"I further certify that during the past five (5) years I have had no injuries, ailments, or illnesses and have not been sick from any cause nor have I consulted or been prescribed for or attended by a physician or practitioner for any cause except:

(If there are no exceptions, please write 'No Exceptions.')

Ailment, Illiness or Injury   Date   Physician and his
                                              Address

Minor illnesses                        Dr. J. F. Armstrong
                                       First Federal Bldg.

"I agree that if at any time within two (2) years from the date of this certificate any statements herein made shall be found to be untrue in any respect, the Company shall have the right to declare null and void and of no effect the insurance covered by this certificate."

The defendant further alleged that the above mentioned statements were untrue, (1) in that the said William Walter Coffey, Sr., was not in good health, free from all diseases, deformities and ailments on the date of said certificate, but was at that time under the care of a duly licensed and practicing physician for a serious ailment, all of which was known to the said William Walter Coffey, Sr., when he executed said application; and (2) in that the said William Walter Coffey, Sr., had suffered with illness and ailments within said five-year period and had consulted and been prescribed for by a duly licensed and practicing physician, Dr. R. H. McArthur, at least four times within the three-week period prior to the date of said certificate, which ailment and illness and treatment were well known to the said William Walter Coffey, Sr. The defendant further alleged that, because of said misstatements, when the facts of said ill health, disease and medical treatment became known to

the defendant, the defendant immediately exercised its right to declare null and void said certificate of insurance and tendered a return of the premium paid on said policy. The defendant therefore denied that the plaintiff was entitled to recover any amount whatsoever against the defendant under and by virute of said certificate of insurance.

The plaintiff answered the affirmative matters set forth in the defendants' answer; and the plaintiff also filed an amended declaration in which the First Federal Savings & Loan Association was named as a party defendant, but no affirmative relief was sought against said Savings & Loan Association.

The case was tried before a jury on May 19, 1959. Only one witness testified during the hearing.

Robert Covington, Assistant Treasurer of the First Federal Savings & Loan Association, who was called to testify as an adverse witness for the plaintiff, testified that a printed or typewritten notice was mailed to the mortgage debtors of the First Federal Savings & Loan Association sometime prior to December 31, 1956, informing them that the First Federal was helping to provide life insurance coverage for mortgage loans, which would give family protection to debtors, and inviting such mortgage debtors, if interested, to contact one of the association's loan consultants; that, to the best of his memory, the plaintiff, Mrs. Erie Prisock Coffey, called him on the telephone and asked that he send to her the necessary forms for the filing of an application for such insurance; that he mailed said forms to Mr. Coffey on December 31, 1956, along with a letter requesting that he fill out the two statements pertaining to his health, and that he execute four copies of the application after the blank spaces had been filled in. The letter stated that the amount of the premium for the first year would be $69.64, check for which should be enclosed with the executed copies of the certificates referred to. Covington stated that the certificate of insurance dated Jan-

uary 4, 1957, was issued on the application signed by W. W. Coffey, which was returned to Covington by mail. Mr. Coffey did not come to Covington's office to make the application. Covington identified copy of the check issued by Mrs. Coffey on January 2, 1957, for $69.64, payable to the First Federal Savings & Loan Association, in payment of the first premium, and also proofs of death of Mr. Coffey on August 11, 1957, signed by Mrs. Coffey and by Dr. R. H. McArthur. The proof of death signed by Dr. R. H. McArthur showed that he was first consulted about the condition of the deceased on December 17, 1956, that the immediate cause of death was carcinoma nasopharynx with cerebral extension, and that in the doctor's opinion that disease had existed since December 1956.

Attached to the doctor's proof of death was a letter dated August 27, 1957, in which the doctor related the facts concerning Mr. Coffey's illness as follows: Mr. Coffey first reported to his office on December 17, 1956, at which time he stated he had a mild sore throat, from which he had suffered for about a week or ten days. The doctor's examination of the patient at that time revealed a small ulcerated area in the vault of the nasopharynx, and it was felt that this might well be an infectious process. However, consideration was given to the fact that this might also be an early neoplasm. The patient, however, was not advised of this possibility at that time. He was treated with antibiotics and local therapy to the nasopharynx, and was reexamined on December 27, 1956. A biopsy of the lesion was advised. The biopsy was performed on December 29, 1956. The pathology report following the biopsy was received by the doctor on January 2, 1957, and since the report was positive for epidermoid carcinoma, the patient was immediately admitted to the Mississippi Baptist Hospital on that date to begin x-ray therapy to the nasopharynx. At the request of his wife, because of the patient's temperament he was not advised that this lesion was definitely ma-

lignant until after completion of the x-ray therapy to the nasopharynx, at which time the lesion was definitely regressing rapidly. His response to x-ray therapy appeared to be good for a short period of time, but the lesion rapidly recurred and began to extend, which of course led to several periods of hospitalization. The patient was finally hospitalized in August 1957 and died on August 11, 1957.

Covington identified a letter which had been written to the plaintiff's attorney on September 5, 1957, by W. M. Gooch, Secretary of the Standard Life Insurance Company, in which the writer acknowledged receipt of the claim forms submitted in connection with the certificate of insurance dated January 4, 1957, as well as the death certificate. In that letter the plaintiff's attorney was informed that, since Mr. Coffey had been under treatment for the condition which resulted in his death since the middle of December 1956, and was suffering from an ailment which resulted in his death at the time the certificate was issued, he was not insurable, and that in accordance with the certificate signed by the insured on the bottom of the group life certificate dated January 4, 1957, the company had declared the group life certificate No. 287 to be null and void. The plaintiff's attorney was also advised that the premium of $69.64, which was paid to the company as the first annual premium for the insurance coverage, was being returned to the First Federal Savings & Loan Association.

At the conclusion of the evidence the court instructed the jury to find for the defendants. A judgment was thereupon entered in favor of the plaintiff for the sum of $69.64 only, being the amount of the premium paid by the plaintiff for the insurance coverage. From that judgment the plaintiff has prosecuted this appeal.

The appellant has assigned and argued only one point as ground for reversal of the judgment of the lower court, and that is that the court erred in granting a directed verdict in favor of the appellee. It is argued that the

statements made by the insured in the certificate attached to and made a part of the insurance contract were representations and not warranties; that this Court said in effect in National Life Insurance Co. v. Green, 191 Miss. 581, 2 So. 2d 838, 3 So. 2d 812, that statements made by an applicant which are representations and not warranties leave open for proof the question of good faith or fraud; and that the record in this case reveals that the insured acted in good faith, and the appellee introduced no evidence to show fraud on the part of the insured.

But we think there was no error in the court's action in granting the peremptory instruction requested by the appellant. The untrue statements contained in the application of the insured, in our opinion, gave the insurance company the right to declare the certificate of insurance null and void at its option. It is undisputed that at the time the certificate of insurance was issued, the certificate holder, W. W. Coffey, Sr., was under the professional care of Dr. R. H. McArthur for the treatment of a throat cancer; that tissue from his throat had been removed for pathological examination; and that he had been admitted to the Baptist Hospital for x-ray therapy. It is true that Dr. R. H. McArthur stated in his letter of August 27, 1957, that, ''At the request of his wife, because of the patient's temperament, he was not advised that this lesion was definitely malignant until after completion of x-ray therapy to the nasopharynx at which time the lesion was definitely regressing rapidly.'' But it is clear that Mr. Coffey was fully aware of his treatment by the physician, Dr. McArthur, during the eighteen day period immediately prior to the date of the certificate. He knew of the removal of tissue from his throat, his admission to the Baptist Hopsital, and the x-ray therapy that was there administered to him, and it was his duty to make known to the insurance company those facts when he signed the certificate upon the basis of which he was asking that

the life insurance policy be issued. He knew that he was not in good health, free from all diseases or ailments. He knew that he had suffered from ailments or illnesses during the three weeks immediately preceding the date of the execution of the above mentioned certificate, and that he had consulted and had been prescribed for and attended by Dr. McArthur during that period of time; and yet he mentioned none of these facts in the certificate which he executed as the basis for the granting of the life insurance covered by the above mentioned group life certificate.

In 29 Am. Jur., p. 962, Insurance, par. 699, the text-writer, in discussing the effect of misrepresentations, says:

"There can be no doubt that a material false representation is a ground for the avoidance of an insurance policy, the same as any other contract, and that within limitations hereinafter discussed, such a misrepresentation by the insured renders the insurance contract voidable at the option of the insurer, although the policy is not thereby rendered void ab initio. Furthermore, a binding receipt, as well as a policy, may be vitiated through a false representation made by an applicant."

In Cooperative Life Association v. Leflore, 53 Miss. 1, this Court held that a contract of insurance, like other contracts is avoided by an untrue statement by either party as to a matter vital to the agreement, though there be no intentional fraud in the misrepresentation.

In Mutual Life Insurance Company of New York v. Hilton-Green, Executors of Wiggins (1915), 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202, the Court held that "Material representations in an application for life insurance which are incorrect, if known to be untrue by the assured when made, and nothing else appearing, invalidate the policy issued by the insurer relying on such representations, without further proof of actual conscious design to defraud."

In Fidelity Mutual Life Insurance Co. v. Miazza, 93 Miss. 18, 46 So. 817, the Court said: "It is the universal rule that any contract induced by misrepresentation or concealment of material facts may be avoided by the party injuriously affected thereby. If the applicant for insurance undertakes to make a positive statement of a fact, if it be material to the risk, such fact must be true. It is not sufficient that he believes it true, but it must be so in fact, or the policy will be avoided, provided, always, that the misstatement be about a material matter."

The statements contained in the certificate which W. W. Coffey, Sr., signed "as a basis for granting the life insurance covered by the above certificate" were untrue, and the insured must have known that they were not true. The representations contained in the statements related to matters material to the risk; they were false representations; and under the terms of the agreement signed by the insured the Company had a right to declare null and void the insurance covered by the certificate. Cooperative Life Association v. Leflore, supra; Planters Insurance Co. v. Myers, 55 Miss. 479; Fidelity Mutual Life Insurance Co. v. Miazza, supra; Citizens' National Life Insurance Co. v. Swords, 109 Miss. 635, 68 So. 920; National Casualty Co. v. Johnson, 219 Miss. 1, 67 So. 2d 865; Life & Casualty Insurance Co. of Tennessee v. Kelly, 202 Miss. 319, 32 So. 2d 120.

The judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.